**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DHAWNDRIC McDOWELL, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   No. 13 C 5713 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM OPINION**

Dhawndric McDowell was convicted in this court of conspiracy and attempted possession with intent to distribute more than 5 kilograms of cocaine.  His conviction was affirmed on appeal. United States v. McDowell, 687 F.3d 904 (7th Cir. 2012).  He has now filed a timely pro se petition to set aside his conviction pursuant to 28 U.S.C. § 2255 on the ground that the attorney who represented him at trial and on appeal was constitutionally ineffective under the rule of Strickland v. Washington, 466 U.S. 668 (1984).

**The Facts**

At trial, the evidence showed that prior to December 2008, the petitioner had purchased large quantities of cocaine from a source he knew only as "Jose" on ten to fifteen occasions.  The transactions were always arranged by telephone, and the two had never met.  In addition to being a cocaine supplier, Jose was also a confidential informant for the Chicago Police Department.

Federal Drug Enforcement Administration agents, working with the Chicago police, arranged to have Jose engage in a series of recorded telephone calls with the petitioner setting up a delivery of 10 kilograms of cocaine on December 2, 2008 at the parking lot of the Dollar Bazaar at Roosevelt Road and Kedzie Avenue in Chicago.  At about the appointed time, the petitioner arrived at the lot in a Porsche Cayenne.  Shortly thereafter, an undercover DEA agent drove into the lot carrying 10 kilograms of sham cocaine in his car.  He asked the petitioner if he needed "10," and the petitioner replied, "yeah."  The agent then told the petitioner to open the back of the Cayenne, which the petitioner did, and the agent placed the bag containing the sham cocaine inside the Cayenne.  What happened next is accurately described in the government's response to the petition:

> The [undercover officer, or UC] then asked the petitioner whether he had "something for me," meaning money.  According to the UC, petitioner stated [that] "he was told he can get me on the next one."

> After the UC placed the sham narcotics in petitioner's car, several officers approached petitioner.  As the officers converged, petitioner backed up at a high rate of speed and struck a law enforcement vehicle parked behind [him].  Petitioner then drove the car over the curb and down a grassy, ice-covered hill, striking an iron fence.  After striking the fence, petitioner continued to drive along the fence line until he struck a utility pole.  At that point, petitioner's car came to rest and petitioner attempted to escape out [of] the driver's side window.  Officers took petitioner into custody at approximately 6:30 p.m.

(Gov't's Resp. at 3 (citations omitted).) The events at the parking lot and the subsequent chase were audio and video recorded.

After the arrest, the petitioner told the agents that he was an informant for the Chicago Police Department. What happened after that is described in the Court of Appeals' opinion:

> Because it was after hours and they needed to sort out this claim, the agents asked him if he would be willing to waive his right to prompt presentment before a magistrate judge. See FED. R. CRIM. P. 5(a). McDowell agreed, signed a written Rule 5(a) waiver, and spent the night in jail. The next morning he signed a Miranda waiver and confessed his involvement in cocaine trafficking. He was taken before a magistrate judge early that afternoon.

687 F.3d at 906.

Prior to trial, petitioner's attorney filed a motion to suppress his confession under the McNabb-Mallory rule because of the delay in his presentment before a magistrate judge. After two evidentiary hearings, we denied the motion, finding that petitioner had voluntarily waived presentment and that there was no unnecessary delay. We also found that the delay was not unreasonable.

The trial lasted two days. The defense rested without calling any witnesses. On the unsuccessful appeal, counsel alleged three errors: (1) failure to suppress petitioner's confession because of the late presentment; (2) failure to require the government to produce Jose at the trial; and (3) refusal to instruct the jury that a confession needed to be corroborated.

## <u>Alleged Ineffective Assistance of Trial Counsel</u>

As the government points out at page 12 of its response to the petition, in order to make out a claim of ineffective assistance the petitioner must show both that "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694 (1984). It is clear that the petitioner has not made this showing.

In his petition, McDowell asserts that his trial counsel was ineffective in failing to retain a "video analyst" to prove that, as he told counsel, the video had been altered. He claims that he is not the person shown on the video. (Pet. at 7.) In his memorandum submitted in support of the petition, he changes the story. He claims that the video shows him at the wrong location and wearing clothes different from the ones he was wearing. (Mem. at 11.) Assuming that the version in his memorandum is what he now relies on, he does not explain what location he was actually in when the video was taken, nor what clothes he was wearing (and, if it was him on the video, what difference the clothing would make in any event). He alleges in the memorandum that counsel was deficient in failing to challenge the authenticity of the video at trial, but, again, fails to offer a rational basis for such a challenge. His reference to an "un-authentic video tape of the

petitioner in a sting operation of events that never even took place," Mem. at 5, is of no help.

The petitioner also faults the trial attorney for not challenging the authenticity of signatures on documents the prosecution claims he had signed. He states "that was not his signature on the paper." (Mem. at 9.) He does not indicate what paper he is referring to, but we will assume it's the signed confession. He is more specific when he says that the "petitioner never signed any waiver as the prosecutor claimed." (Mem. at 11.) Considering the testimony by prosecution witnesses that the petitioner did indeed sign in their presence all of the documents that bear his purported signature, it was well within the range of effective assistance for trial counsel to forgo any challenge to the signatures.

The petitioner states that trial counsel did not contact potential witnesses, Mem. at 5, but he does not name them or indicate what their testimony would have been.[1]

The petitioner argues that the performance of counsel on appeal was ineffective in that she failed to raise the issues he told her to raise, namely (1) a challenge to the videotape, (2) the authenticity of his signature, and (3) prosecutorial misconduct (i.e., alteration of the videotape). Our view is that, assuming

---

[1] In an affidavit filed by defense counsel on February 26, 2014, she states that petitioner "never identified a potential witness for counsel to interview." (Aff. ¶ 7.) In regard to the issue of signatures, she states that petitioner "admitted to signing the 17 hour waiver." (Aff. ¶ 8).

petitioner did instruct counsel to raise these issues, they were baseless and would have had no prospect of success. The three issues she did raise were at least arguable and well presented. Counsel's performance on appeal, while unsuccessful, was in no way constitutionally ineffective.

The petitioner also claims that defense counsel "became romantically involved with her client to the point that her professional judgment became impaired towards litigating the petitioner's case." (Mem. at 7-8.) Attached as exhibits to the petitioner's memorandum are a letter to him from defense counsel, which he submits as evidence of a romantic relationship, and his own handwritten affidavit alleging that sexual activity between him and defense counsel took place at the Metropolitan Correctional Center in Chicago. The attorney's affidavit of February 26, 2014 denies these allegations.

It will not be necessary to resolve or give any further consideration to these allegations. Their only relevance would lie in the possibility that they have a causal relationship to some defect or defects in counsel's representation of the petitioner. But there was no defect in the representation. And the possible existence of a romantic relationship would have had nothing to do with counsel's performance. There was no issue of clouded judgment here. Counsel did the best that reasonably could have been expected with a virtually hopeless case.

## **Conclusion**

The petitioner has failed to show that his trial and appellate attorney was constitutionally ineffective in her representation of him. Accordingly, the petition to vacate the sentence pursuant to 28 U.S.C. § 2255 is denied.

There are no factual issues that require resolution; therefore, the petitioner's alternative motion for an evidentiary hearing is denied.

Because the petitioner, Dhawndric McDowell, has not made a substantial showing of the denial of a constitutional right, we deny a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.


DATE:        April 23, 2014


ENTER:    _____
          John F. Grady, United States District Judge